IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Kevin L. Howell,                          )
    Petitioner,                       )
                              )
v.                                        )          **1:21cv1041 (CMH/TCB)**
                              )
Harold Clarke,                            )
    Respondent.                       )

## MEMORANDUM OPINION

Kevin L. Howell ("Howell" or "Petitioner"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in the Circuit Court of the City of Portsmouth, Virginia for first-degree murder and one count of the use of a firearm in the commission of murder. [Dkt. No. 1]. Respondent filed a Motion to Dismiss, with a supporting brief and exhibits [Dkt. Nos. 11-13], and notified of petitioner of his right to respond after receiving the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 14]. Petitioner has filed a response. [Dkt. No. 17]. Howell has also requested an evidentiary hearing. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition will be dismissed.

## I. Procedural History

Petitioner is detained pursuant to the Circuit Court of the City of Portsmouth, Virginia's September 20, 2018 judgment sentencing him to life in prison, plus three years, for his convictions for first-degree murder, in violation of Virginia Code § 18.2-32; and use of a firearm in the commission of a felony in violation of Virginia Code § 18.2-53.1. (CCT at 110-11).

Commonwealth v. Howell, Case Nos. 17-731-02, -03. The convictions resulted from Howell's three-day jury trial on April 23-25, 2018. (Id. at 51, 66-68).

Judge of the Court of Appeals of Virginia denied Howell's petition for appeal on June 5, 2019, and the denial was upheld by a three-judge panel of the court on August 20, 2019. Howell v. Commonwealth, Record No. 1642-18-1. Howell's petition for appeal had alleged that the evidence did not establish first-degree murder because he had acted in self-defense; that the evidence did not show that he had acted with malice, but in the heat of passion; and that the evidence did not prove premeditation. The Supreme Court of Virginia refused his subsequent petition for appeal by order dated February 7, 2020. Howell v. Commonwealth, Record No. 191190.

On June 8, 2020, Howell filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, which raised the following claims:

a.      Trial counsel provided ineffective assistance by:

        1) Failing to call Carlos Roberts as a witness at trial;

        2) Failing to call Jirrell Johns as a witness at trial;

        3) Failing to call Deshawn Carter as a witness at trial;

        4) Failing to move for a new trial after learning that Carlos Roberts refused to testify because he was threatened;

        5) Failing to move for a mistrial due to the prosecutor's statements in closing, specifically the statements that:

            i. The victim's body was speaking to the jurors and was saying the killing was not self-defense;

            ii. Jerry Askew did not testify and was the source of blood at the crime scene;

            iii. There was a lack of witnesses because they were scared of petitioner;

            iv. Petitioner was suffering from the "CSI effect;"

            v. The jury could disregard the self-defense instruction;

            vi. Petitioner had not shown any of the four prongs of self-defense;

2

        6) Failing to move for a psychiatric evaluation of petitioner;

b.      The Commonwealth engaged in prosecutorial misconduct during closing arguments.

(VSCT H. at 3-4, 6-19). The court summarized the evidence as follows:

> The record, including the trial transcript and trial exhibits, demonstrates that on April 9, 2017, at approximately 2:00 a.m., petitioner shot and killed Maurice Gore at an after-hours party house (the house). Twenty to thirty individuals were present at the house when the shooting occurred, but there was no one in or near the house when police arrived fifteen minutes later and discovered Gore's body. There were no weapons on or near Gore's body. A .40 caliber firearm was recovered from a box in an upstairs bedroom closet and a nine-millimeter magazine containing eight rounds was recovered from the yard, but petitioner's gun was never found. At a local hospital, police located Jerry Askew, who had been in the house and had sustained a gunshot wound to his arm, but Askew refused to cooperate with police. Autopsy evidence established Gore was shot between ten to twelve times, including in the side of the head. Nine of the gunshot wounds were fatal. Eleven .40 caliber cartridge casings and six .40 caliber bullets were recovered from the room where Gore's body was found. Four of the six bullets were embedded in the floorboard beneath Gore's body. Five additional .40 caliber bullets were recovered from Gore's body. All eleven cartridge casings and eleven bullets were determined to be from the same firearm, but it was determined they were not fired from the .40 caliber firearm found in the upstairs bedroom closet. Ten days after the shooting, petitioner voluntarily spoke with police and informed them he shot Gore. Petitioner told police he and Gore had been friends and that they had an argument earlier that night at a nightclub because Gore felt petitioner had not helped him when Gore was released from prison. Petitioner further explained that when Gore arrived at the house, Gore threatened to kill him while displaying a gun and was taken outside by other people. Petitioner stated that a man he did not know handed him a gun and when Gore came back in the house, he shot Gore in self-defense. Petitioner stated he shot Gore multiple times until Gore hit the floor. Despite evidence to the contrary, petitioner denied shooting Gore while standing over him. Petitioner stated he threw his gun in the street when he left. Petitioner told police he heard Gore had been robbed of his gun, cash, and earrings. However, a forensic technician recovered gold earrings from Gore's body and $525 from his pants pocket. Petitioner gave police the names of people he recalled being in the house at the time of the shooting. No eyewitnesses to the shooting testified at trial. Petitioner also did not testify at trial. The jury was instructed on both justifiable and excusable self-defense but found petitioner guilty of first-degree murder and use of a firearm in the commission of a felony.

(Id. at 844-45). The court dismissed the petition on April 1, 2021, finding that counsel was not

effective and that petitioner's claim of prosecutorial misconduct was barred under Slayton v.

Parrigan, 215 Va. 27, 29 (1974). (Id. at 854-55).

On August 24, 2021, Howell filed his § 2254 petition for a writ of habeas corpus and

raised the following claims:

> Ground I: Ineffective assistance of counsel as counsel failed to contact, interview, or subpoena three witnesses: Carlos Roberts, Jirrell Johns, and Deshawn Carter. [Dkt. No. 2 at 3, 6-7].
>
> Ground II: Ineffective assistance of counsel because counsel failed to object to prosecutor's closing arguments, when the prosecutor argued that:
>
>> a. "Mr. Askew was present during the shooting" and "his blood was recovered" at the crime scene, but there was no evidence to support the argument because Askew did not testify. [Id. at 14].
>>
>> b. The victim's body was "speaking to" the jurors, "calling out for justice," and that his last words were "I love you mom." [Id. at 15].
>>
>> c. argued that there were "20 or 30 witnesses present during the" shooting, but that no witnesses had come forward because they were "scared to testify because this 'horrible scary person who they saw execute another person is sitting right here and his name is Kevin Howell;" and that the reason the prosecution did not have any other evidence was because 'each and every witness was afraid because they saw this man execute" the victim. [Id. 15-16].
>>
>> d. Petitioner waited to come forward until he had determined what the evidence was so he would know what to say, which the prosecutor called the "CSI effect;" [Id. at 17].
>>
>> e. the jury could disregard the self-defense instruction because the petitioner's statement he acted in "self-defense" was "not credible." [Id.].
>
> Ground III: Petitioner's due process rights were violated by the Commonwealth engaging in prosecutorial misconduct during closing arguments. [Id. at 18].

## II. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in

the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To

comply with the exhaustion requirement, a state prisoner "must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's

4

established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002). The petitioner bears the burden of proving exhaustion. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

Further, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. "A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and clearly and expressly denied on the independent, adequate state ground of procedural default." Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) (internal quotation marks omitted); see also Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. Yeatts v. Angelone, 166 F.3d 255, 263-64 (4th Cir. 1999). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986).

Respondent admits that all three grounds Howell raised in his § 2254 petition are exhausted, but notes that Howell's Ground III is defaulted. The Supreme Court of Virginia found the substantive prosecutorial improper closing argument claim (claim (b) in state habeas and Ground III in the current petition) was a "non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29 (1974)." (VSCT H. at 855). "The Fourth Circuit has repeatedly

5

recognized that the procedural default rule set forth in Parrigan constitutes an adequate and independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (quoting Mu'min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997)); see also Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005) (same) (citation omitted).

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995). In this case, it is clear that all three of petitioner's claims have no merit.

Howell argues cause and prejudice exists to excuse the Slayton v. Parrigan default because the prosecutor's misconduct was not properly raised in the state trial court or on direct appeal due to ineffective assistance of counsel. [Dkt. Nos. 2 at 11; 17 at 2]. "[I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). "'[P]rinciples of comity and federalism' require that such an ineffective-assistance claim 'be presented to the state courts as an independent claim before it may be used [in a § 2254 proceeding] to establish cause for a procedural default.'" Id. at 451, 452 (citing Murray, 477 U.S. at 489).

> ["B]ecause Edwards makes clear that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" that must have been presented to the state court, there is a strong reason to believe that the state court's resolution of that

> ineffective assistance claim is subject to the same § 2254 principles as an
> ineffectiveness claim presented as a separate, substantive claim for habeas relief.

Powell v. Kelly, 531 F. Supp. 2d 695, 724 (E.D. Va. 2008); see also Winston v. Kelly, 600 F.

Supp. 2d 717, 736-738 (W.D. Va. 2009), aff'd in part, 592 F.3d 535) (applying AEDPA

deference to the state court's evaluation of ineffective assistance claim asserted as cause and

prejudice to excuse procedural default). As noted herein, the claim counsel was ineffective for

not objecting to the alleged instances of improper argument by the prosecutor was raised in state

court habeas proceedings and found to be without merit. Accordingly, Howell cannot establish

cause to excuse his default of the substantive claims of improper argument (Ground III).[1]

Petitioner makes a reference to miscarriage of justice (i.e. actual innocence) [Dkt. No. 2

at 10], but "in order to demonstrate that a miscarriage of justice would result from the refusal of

the court to entertain the collateral attack, a movant must show actual innocence by clear and

convincing evidence." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (citing

Murray v. Carrier, 477 U.S. 478, 496 (1986)); see Bousley v. United States, 523 U.S. 614, 623

(1998) ("'actual innocence' means factual innocence, not mere legal insufficiency") (quoting

Sawyer v. Whitley, 505 U.S. 333, 339 (1992)); Herrera v. Collins, 506 U.S. 390, 404 (1993)

(explaining that a claim of actual innocence is "a gateway through which a habeas petitioner

must pass to have his otherwise barred constitutional claim considered on the merits"). To state

such a claim, the petitioner must satisfy a "rigorous" burden by "support[ing] his allegations of

constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

Schlup v. Delo, 513 U.S. 298, 324 (1995). The actual innocence "exception only applies in

---

[1] Even if the allegation of ineffective assistance of counsel to excuse the default was evaluated without AEDPA deference, the allegation has no merit.

limited circumstances: 'The petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014) (citation omitted). Howell does not rely upon new evidence, and argues the alleged ineffective assistance establishes a miscarriage of justice. The evidence introduced at trial established Howell's guilt, and alleged trial error and allegations of ineffective assistance of counsel do not constitute new evidence [Dkt. No. 2 at 14-15], much less clear and convincing evidence of innocence.

### III. Standard of Review

Under AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) ... to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 18. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687. The United States Supreme Court has characterized AEDPA deference in the context of "a Strickland claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

9

ordinary error correction through appeal." Valentino, 972 F.3d at 581 (quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

*A. Ground I*

Howell's first claim of ineffective assistance of counsel alleges his trial counsel was ineffective for not contacting, interviewing, or subpoenaing three witnesses: Carlos Roberts,

Jirrell Johns, and Deshawn Carter. [Dkt. No. 2 at 3, 6-7]. In state habeas, the Supreme Court of

Virginia found the claim was without merit.

> In a portion of claim (a), petitioner contends he was denied the effective
> assistance of counsel because counsel did not call Carlos Roberts as a witness at
> trial. Petitioner claims counsel interviewed Roberts three days before trial and
> Roberts stated he saw Gore with a handgun at some unspecified point in time
> prior to petitioner shooting him. Petitioner argues that, had Roberts testified, the
> jury would not have found him guilty of first-degree murder. The Court holds this
> portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong
> of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687
> (1984). The record, including the trial transcript, trial exhibits, petitioner's
> exhibits, and the affidavit of counsel, demonstrates that counsel investigated
> Roberts and made a reasonable tactical decision not to call Roberts as a witness
> because Roberts was unwilling to testify and because counsel determined
> Roberts' testimony would not be helpful. Counsel's notes from his interview of
> Roberts indicate Roberts saw Gore with a gun but did not hear Gore threaten
> petitioner. Counsel also noted Roberts was friends with both Gore and petitioner.
> Counsel explains in his affidavit that Roberts refused to testify in court.
>
> Even if counsel had been able to properly serve Roberts with a subpoena and
> force him to testify, counsel could reasonably have determined that Roberts would
> not have been a helpful witness and that his testimony could have been harmful
> because it would have undermined petitioner's claim that Gore threatened him.
> Thus, petitioner has failed to demonstrate that counsel's performance was
> deficient or that there is a reasonable probability that, but for counsel's alleged
> errors, the result of the proceeding would have been different.
>
> In another portion of claim (a), petitioner contends he was denied the effective
> assistance of counsel because counsel did not call Jirrell Johns as a witness at
> trial. Petitioner claims Johns told an investigator that he saw Gore threaten
> petitioner with a handgun at some unspecified point in time prior to petitioner
> shooting Gore. Petitioner argues that, had Johns testified, the jury would not have
> found him guilty of first-degree murder.
>
> The Court holds this portion of claim (a) satisfies neither the "performance" nor
> the "prejudice" prong of the two-part test enunciated in Strickland. The record,
> including the trial transcript, trial exhibits, petitioner's exhibits, and the affidavit
> of counsel, demonstrates that counsel did not have Johns' contact information so
> that he could either speak with him before trial or subpoena him. Although
> counsel did attempt to find Johns, he was unable to do so. Petitioner fails to
> articulate what more counsel could have done to locate this witness. Further, even
> assuming Johns' expected testimony that Gore had threatened petitioner with a
> gun at some unspecified point prior to the shooting would have corroborated
> petitioner's statement to police that Gore had threatened petitioner with a gun
> prior to being taken outside, petitioner still cannot not show a reasonable
> probability of a different outcome had Johns testified. To establish a self-defense

claim, the defendant must show that he was in imminent danger of harm by a showing of an overt act by the victim that created an immediate threat to the defendant's safety. Hines v. Commonwealth, 282 Va. 674, 679 (2016). The "bare fear" of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. Stoneman v. Commonwealth, 66 Va. 887, 900 (1874). "There must [also] be some overt act indicative of imminent danger at the time." Vlastaris v. Commonwealth, 164 Va. 647, 652 (1935). Petitioner did not claim in his statement to police that Gore threatened him again, brandished a gun when he came back inside the house, or engaged in any other threatening behavior towards petitioner. No gun was found on or near Gore's body. Additionally, the autopsy evidence established that Gore was shot at least ten times, nine of which were fatal, and the forensic ballistic evidence suggested Gore was shot four times from above after he was lying on the ground. Petitioner's mere statement to police that Gore had previously threatened to kill him while displaying a gun was not sufficient to show that petitioner acted under threat of imminent bodily harm at the time of the shooting. Johns' testimony, if added to the other evidence, would not have changed that there was no evidence of an overt act by Gore at the time petitioner shot him such that there is a reasonable probability petitioner would have prevailed on his self-defense claim. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (a), petitioner contends he was denied the effective assistance of counsel because counsel did not call Deshawn Carter as a witness at trial. Petitioner claims he told counsel Carter would testify that he saw Gore threaten petitioner with a handgun at some unspecified point in time prior to petitioner shooting him. Petitioner asserts he sent a letter to counsel three months before trial advising him Carter was incarcerated and told counsel in person at their last visit before trial that Carter was housed at the same jail as petitioner and was willing to testify. Petitioner argues that, had Carter testified, the jury would not have found him guilty of first-degree murder.

The Court holds this portion of claim (a) fails to satisfy the prejudice prong of the two-part test enunciated in Strickland. Assuming Carter would have been willing and able to testify, as petitioner contends he would have, petitioner still cannot show a reasonable probability of a different outcome had Carter testified.

There was no evidence that when Gore came back in the house that he still had a gun, that he verbally threatened petitioner or pointed a gun at him, or that he engaged in any other threatening behavior toward petitioner. Petitioner's mere statement to police that Gore had previously threatened to kill him while displaying a gun was not sufficient to show that petitioner acted under threat of imminent bodily harm at the time of the shooting. Carter's testimony, if added to the other evidence, would not have changed that there was no evidence of an overt act by Gore at the time petitioner shot him such that there is a reasonable probability petitioner would have prevailed on his self-defense claim. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but

12

for counsel's alleged errors, the result of the proceeding would have been
different.

(VSCT H. at 845-48).

The state court, in denying this claim, did not render a decision that was contrary to or

involved an unreasonable application of clearly established federal law, nor was the decision

based on an unreasonable determination of the evidence presented in the trial court under 28 U.S.

Code § 2254(d). Ground I will be dismissed.

*B. Ground II*

In Ground Two, petitioner alleges that counsel was ineffective for failing to object to

several statements the Commonwealth made during closing arguments. Petitioner raised these

claims in state habeas in the Virginia Supreme Court, which denied them on the merits, finding

that:

> In another portion of claim (a), petitioner contends he was denied the effective
> assistance of counsel because counsel did not object or move for a mistrial when
> the prosecutor in her closing argument stated "[Gore's] body is speaking to you,
> and it is saying this is not self-defense. This is an excuse" while referencing an
> enlarged photograph of Gore's dead body. Petitioner asserts this argument was
> calculated to inflame the passions and prejudices of the jury. Petitioner argues
> that, had counsel objected or moved for a mistrial, there is a reasonable
> probability the trial court would have granted a mistrial or the appellate courts
> would have vacated his convictions or remanded his case for a new trial.
>
> The Court holds this portion of claim (a) satisfies neither the "performance" nor
> the "prejudice" prong of the two-part test enunciated in Strickland. In closing
> argument, the prosecutor should not appeal to the jury's sympathy, passion, or
> prejudice. Jones v. Commonwealth, 196 Va. 10, 17 (1954). The record, including
> the trial transcript, demonstrates that the prosecutor was emphasizing the twelve
> bullet wounds in Gore's body to refute petitioner's self-defense claim. Counsel
> could reasonably have determined this argument was not objectionable because it
> was not intended to inflame the passion of the jury but was a comment on the
> autopsy evidence. See Elliott v. Warden of Sussex I State Prison, 274 Va. 598,
> 618 (2007) (a prosecutor's argument was proper where based upon the evidence).
> Thus, petitioner has failed to demonstrate that counsel's performance was
> deficient or that there is a reasonable probability that, but for counsel's alleged
> errors, the result of the proceeding would have been different.

13

In another portion of claim (a), petitioner contends he was denied the effective assistance of counsel because counsel did not object or move for a mistrial when the prosecutor in her closing argument stated "Let's talk about the lack of witnesses here because Jerry Askew, a man who was actually shot, who went to the hospital, refused to cooperate," and "Yes, there is a blood trail, a little smearing on the wall that leads upstairs. There are droplets that lead out the back door, but don't forget we know that one person, who's not speaking today, that is the other person who was injured and shot. We know that is Jerry Askew, who refused to cooperate. He was shot in his arm. He went to Norfolk General. He admitted that he ran upstairs, got a tee shirt, and ran out the back door. That's the blood up to the second bedroom, not the third, where the gun is in the container in the closet, but the second bedroom. It's his blood." Petitioner contends these facts were not in evidence since Askew did not testify and because no DNA test was conducted on the blood. Petitioner argues that, had counsel objected or moved for a mistrial, there is a reasonable probability the trial court would have granted a mistrial or the appellate courts would have vacated his convictions or remanded his case for a new trial.

The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that other witnesses testified as to the blood trail and Askew's injury. Officer Montero testified he observed a trail of fresh blood going upstairs in the house. Officer Ledbetter testified there was blood in the stairwell, and he checked to make sure there was no one injured upstairs. Mary McCurdy, a forensic technician, testified there was blood in the kitchen leading up the stairs and out the back door. The photographs taken by McCurdy show that there was no blood in the upstairs bedroom where the gun was found. Sergeant Jenkins testified that there was a trail of blood droppings in the kitchen leading to he back door. Sergeant Jenkins testified that Askew was in the house at the time of the shooting and was shot in the arm. Sergeant Jenkins further testified that he sent a detective to speak with Askew at the hospital where he was receiving treatment for his gunshot wound but that Askew would not cooperate and would not identify the shooter. Sergeant Jenkins also testified that Askew was a "fugitive" at the time of trial. Under the circumstances, counsel could reasonably have determined the portion of the prosecutor's argument based on this testimony or reasonable inferences drawn from the testimony was not objectionable. However, there was no evidence admitted at trial demonstrating Askew went upstairs and got a tee shirt before leaving through the back door. During cross-examination of McCurdy, petitioner's counsel suggested the gun found in the upstairs closet could have been Gore's. In redirect examination, the prosecutor attempted to elicit evidence that Askew told police he went upstairs after he was shot to get a shirt before leaving the house. Petitioner's counsel objected and the court sustained the objection. In closing argument, the prosecutor referenced Askew's statement to police, saying "He admitted that he ran upstairs, got a tee shirt, and ran out the back door," which was not in evidence. The prosecutor referenced Askew's statement in combination with the admitted evidence that the blood trail did not go into the bedroom where the gun was found

14

to attempt to negate the inference that Askew placed the gun in the upstairs closet. Under the circumstances, counsel could reasonably have determined that, although this portion of the prosecutor's argument was objectionable because it was based on a fact not in evidence, there was no benefit to objecting because the fact was not significant. Further, counsel could reasonably have determined that an objection would have been more harmful than helpful as it would have drawn attention to the fact and suggested it had greater significance than it did. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (a), petitioner contends he was denied the effective assistance of counsel because counsel did not object or move for a mistrial when the prosecutor in her closing argument stated "Why are there no witnesses?" and argued that the many eyewitnesses to the shooting did not testify because they witnessed petitioner "execute another man, an unarmed man" and further argued that they were scared to testify. Petitioner argues that, had counsel objected or moved for a mistrial, there is a reasonable probability the trial court would have granted a mistrial or the appellate courts would have vacated his convictions or remanded his case for a new trial.

The Court holds this portion of claim (a) satisfies neither the "performance"nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates Officer Montero and Officer Ledbetter testified that there was no one in or near the house when they responded to the scene fifteen minutes after the shooting. Sergeant Jenkins testified that none of the twenty to thirty individuals believed to be in the house during the shooting contacted police. Sergeant Jenkins testified detectives contacted individuals that they could identify as being in the house during the shooting, but no one was willing to speak with them. Sergeant Jenkins further testified detectives also contacted the individuals that petitioner identified, including Roberts, several times but no one came to the police station for an interview. In closing argument counsel may argue reasonable inferences that may be drawn from the evidence that has been admitted into the record. <u>Graham v. Cook</u>, 278 Va. 233, 250 (2009). Under the circumstances, counsel could reasonably have determined this argument about the lack of eyewitnesses was not objectionable because it was based upon reasonable inferences drawn from the evidence presented that none of the twenty to thirty eyewitnesses to the shooting remained at the scene, cooperated with police, or were willing to testify at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (a), petitioner contends he was denied the effective assistance of counsel because counsel did not object or move for a mistrial when the prosecutor in her closing argument stated "So when he comes in ten days later, he thinks he knows everything, and he suffered from this CSI effect. He thinks I've heard everything. I know how to tailor my story. I know what to say. I

know just what to say. It's self-defense, because I know what they have" and further "It's not credible at all. It's not self-defense. It's cold-blooded murder." Petitioner asserts this argument was an improper personal opinion as to his credibility and guilt. Petitioner argues that, had counsel objected or moved for a mistrial, there is a reasonable probability the trial court would have granted a mistrial or the appellate courts would have vacated his convictions or remanded his case for a new trial.

The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and trial exhibits, demonstrates that petitioner waited ten days after the incident before speaking with police. His statement to police showed that after the shooting he had spoken with other people who were at the house that night and had heard what people in the community were saying about the shooting. Moreover, petitioner takes the prosecutor's comments that "It's not credible at all. It's not self-defense. It's cold-blooded murder," out of context. Petitioner's counsel in closing argument noted that Sergeant Jenkins testified regarding his interview with petitioner that he thought petitioner was credible. Petitioner's counsel suggested the jury accept Sergeant Jenkins' opinion. In response, the prosecutor noted that Jenkins' opinion was formed before much of the forensic evidence, which did not support petitioner's self-defense claim, was returned. The prosecutor argued the bullets lodged in the floor under Gore demonstrated that petitioner lied to Jenkins when he claimed he had not stood over Gore and shot him. The prosecutor argued that, contrary to Jenkins' opinion, "now you have the reports, you have the forensic evidence, and you have the bullets. You have the casings. It's not credible at all. It's not self-defense. It's cold-blooded murder." Counsel could reasonably have determined the prosecutor's argument was responsive to his own argument, was based on the evidence, and did not express a personal opinion such that it was objectionable. See United States v. Schmitz, 634 F.3d 124 7, 1270 (11th Cir. 2011) ("We have no doubt that there are some cases where a prosecutor is justified in arguing during closing arguments that a particular witness is lying, if that is an inference supported by the evidence at trial."); United States v. Jacona, 728 F.3d 694, 701 (7th Cir. 2013) ("Where the evidence supports an inference that the defendant has lied, then a comment in closing argument as to his credibility, including referring to him as a liar, is a hard but fair blow, as long as the argument is made based on the evidence and not a comment as to the prosecutor's personal opinion."). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (a), petitioner contends he was denied the effective assistance of counsel because counsel did not object or move for a mistrial when the prosecutor in her closing argument stated "there is a self-defense instruction. There are two. One says the defendant was without fault. Well you can disregard that one. I'm going to tell you why, because there was a fight, an altercation, by his own admission at the club." Petitioner asserts this argument encouraged the jury to disregard the jury instructions. Petitioner argues that, had counsel objected

16

or moved for a mistrial, there is a reasonable probability the trial court would have granted a mistrial or the appellate courts would have vacated his convictions or remanded his case for a new trial.

The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates the prosecutor also stated in closing argument, "I want to clear up one thing, I would never ever say disregard the law. I want you to follow the law, and I want you to read these instructions." Counsel could reasonably have determined this argument as to the self-defense jury instructions was not objectionable because it was clear from the context the prosecutor was arguing the evidence showed petitioner was at fault and did not support a finding of justifiable self-defense and not arguing the jury should disregard the instructions. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (a), petitioner contends he was denied the effective assistance of counsel because counsel did not object or move for a mistrial when the prosecutor in her closing argument stated "He has to meet all four prongs for self-defense. He can't even meet number one. He can't meet two, three, or four either." Petitioner asserts this argument improperly shifted the burden of proof. Petitioner argues that, had counsel objected or moved for a mistrial, there is a reasonable probability the trial court would have granted a mistrial or the appellate courts would have vacated his convictions or remanded his case for a new trial.

The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Counsel could reasonably have determined the prosecutor's argument that petitioner had not met the burden of proof to prove the four prongs of self-defense was not objectionable as improper burden shifting because petitioner had the burden of roving he acted in self-defense. See Commonwealth v. Sands, 262 Va. 724, 729 (2001) (self-defense is an affirmative defense in which the defendant implicitly admits his actions were intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt as to his guilt.) Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(VSCT H. at 848-54).

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 11] will be granted, and the motion for an evidentiary hearing [Dkt. No. 3] will be denied. An appropriate Order and judgment shall issue.[2]

June 1, 2022

Claude M. Hilton
USDJ

---

[2] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.